198       NEW-YORK PRACTICE REPORTS.

Benham agt. The New-York Central Railroad Co.

## SUPREME COURT

WATSON P. BENHAM, respondent, agt. THE NEW-YORK CEN-
TRAL RAILROAD COMPANY, appellants.

By § 399 of the Code, the right to examine the *assignor* of a thing in action, as
a witness, is made to depend on the power of the party against whom he is
offered, to procure the testimony of the other party to the contract.

The last clause of that section requiring *notice* to be given to the adverse party
of the intended examination of the assignor, applies not exclusively to the few
cases where the adverse party is sued *en autre droit*, but to a subject much
more general in its nature, and with equal reason embraces every *case*, where
that *species* of evidence is to be resorted to, including cases in courts of a jus-
tice of the peace.   [*The reported cases taking this view of the subject con-
curred in.*]

The notice should specify distinctly the points upon which it is intended to ex-
amine the assignor as a witness.

*Erie General Term, Nov.,* 1854.
MARVIN, MULLETT, BOWEN *and* GREENE, *Justices.*

THIS was an appeal from a judgment of the county court of
Genesee county, affirming a judgment of a justice's court on
appeal.

The action before the justice was for the recovery of damages
for the loss or destruction of sixteen sheep, delivered by the
plaintiff and one Willis Benham to the defendants, at South
Byron, to be carried to Albany in their railroad cars.   The de-
fendants, by their answer, denied each and every allegation of
the complaint.   The action was tried before the justice and a
jury on the 12th of January, 1854.   Upon the trial the plaintiff
offered Willis Benham, who had assigned his interest in the
cause of action to the plaintiff, as a witness on his behalf, on
proving the giving of the following notice to a director of the
defendant's company :—

Benham agt. The New-York Central Railroad Co.

## In Justice's Court.

WATSON P. BENHAM agt. THE NEW-YORK CENTRAL RAILROAD COMPANY.

Before M. W. SHED, Esq.

*To the above-named defendants:*

Take notice—that on the trial of this action, *Willis Benham*, the assignor of his interest in the claim against the above-named defendants, upon which this action is brought, will be examined as a witness on the part of the plaintiff, as to the liability of the above-named defendants—and also generally as a witness in said action.

Signed by the attorneys for the plaintiff.

Dated Dec. 1, 1854.

The counsel for the defendants objected to the examination of Willis Benham, as a witness, on the following grounds among others:—

That the notice of his intended examination did not specify what was expected to be proved by the witness therein mentioned.

Also, on the ground that such notice did not specify the points upon which the witness was intended to be examined.

The court overruled these objections and admitted the witness, to which the defendant's counsel excepted.

The witness was then examined, under various specific objections on the part of the defendants, to prove his assignment to the plaintiff, and generally to prove all the facts tending to make out the plaintiff's action against the defendants. The jury found their verdict for the plaintiff for $64 damages.

This appeal was argued before the general term in Genesee county, Sept. 1854.

E. A. HOPKINS, *for appellant.*
WAKEMAN & BRYAN, *for respondents.*

By the court—MULLETT, Justice.   If the justice erred in admitting Willis Benham, as a witness, his judgment ought not to have been sustained by the county court.

The correctness of the decision of the justice in admitting Willis Benham as a witness for the plaintiff, depends upon the construction to be given to the last sentence of the 399th section of the Code, as amended in 1851.   The said 399th section, after providing that when an assignor of a thing in action or contract is examined as a witness, on behalf of any person deriving title through or from him, the adverse party may offer himself as a witness to the same matters in his own behalf, and shall be so received, proceeds as follows :—

"But such assignor shall not be admitted to be examined in behalf of any person deriving title through or from him against an assignee or an executor, or administrator, unless the other party to such contract or thing in action, whom the defendant or plaintiff represents, is living, and his testimony can be procured for such examination ; nor unless at least ten days' notice of such intended examination of the assignor, specifying the points upon which he is intended to be examined, shall be given in writing to the adverse party."

The elliptical construction of this clause has led to some diversity of opinion as to its meaning.   By some it is claimed, that the notice required to be given of the intended examination of the assignor is requisite only when he is to be examined against an assignee, or an executor, or administrator: while others hold that the ten days' notice is to be given in all cases where it is intended to examine the assignor of a chose in action in behalf of a person deriving title through or from him. Of the latter opinion was the supreme court, at a general term in the fourth district, January, 1852, (7 How. Pr. R. p. 1,) and in July, 1853. (8 How. Pr. R. 341.)   In this construction of the 399th section I fully concur, as the one indicated by its history and the object of its present provisions.

It appears that the policy which has governed the provisions of the Code, in reference to the incompetency of witnesses on the ground of interest, has not been uniformly the same.   The

commissioners, in their first report in 1848, recommended the abrogation of the rule which excluded the witness on the ground of interest in the event of the action. (*Com.* 1 *Rep.* 246, 249.) The provisions of the Code, reported by the commissioners on the subject under consideration, were as follows :—

" *Sec.* 351. No person offered as a witness shall be excluded by reason of his interest in the event of the action. But this section shall not apply to a party to the action, nor to a person for whose immediate benefit it is prosecuted or defended."

While the Code reported by the commissioners was pending before the legislature, the last clause of the 351st section was amended by adding the following words : " Nor to any assignor of a thing in action assigned for the purpose of making him a witness." Thus putting *such* assignor, in reference to his competency as a witness, on a footing with a party to the action, or a person for whose immediate benefit it is prosecuted or defended.

The 198th and 199th sections of the Code of 1849, is merely a re-enactment of the 151st and 152d sections of the Code of 1848, as amended by the legislature while it was before them, March 31, 1848.

The legislature has not manifested the same confidence in the disinterested integrity of men who deal in selling and assigning the non-negotiable contracts, unsettled book accounts, &c., between themselves and their neighbors, and then propose to establish the claim of the assignee by their own testimony, as was proposed by the commissioners of the Code.

It seems to be understood that the 399th section of the Code of 1851, after the first sentence, was suggested by the legislature. (WILLARD, J., 7 *How. Pr. Rep. p.* 3.) As the Code then stood the assignor of a contract could be admitted as a witness to support the claim of his own assignee, unless it could be proved that the assignment was made for the purpose of making him a witness, and that he was interested in the event of the action : while the other party to the contract, being a party to the action, and necessarily interested in the event, at least to the amount of the costs, was excluded.

Both parties to the original contract must have equal knowledge of the fact which constituted its validity and conditions; and it would seem that truth on these subjects would be most likely to be elicited by allowing the testimony of both, if either. This appears to have been the opinion of the legislature of 1851.

One object of the 399th section of the Code, as amended in 1851, was to make the right to examine these *quasi* parties, or parties to the original contract reciprocal, or not to allow it at all; therefore, the section first provides that "where an assignor of a thing in action or contract is examined as a witness, in behalf of any person deriving title through or from him, the adverse party may offer himself as a witness to the same matter, in his own behalf, and shall be so received." This provision secures the desired reciprocity where, as is generally the case, the adverse party to the action is a party to the original contract.

The section then declares, in substance, that such assignor shall not be admitted to be examined in behalf of any person deriving title through or from him, against *an assignee, or executor, or administrator*, unless the other party to such contract, or thing in action, who is represented by the party against whom the assignor is proposed to be examined, is living, and his testimony can be procured for such examination; nor unless ten days' *notice* of such intended examination of the assignor, specifying the points upon which he is intended to be examined, shall be given in writing to the adverse party.

The first part of this alternative sentence applies exclusively to the few cases therein mentioned; that is, to cases where the assignor of a thing in action is proposed to be examined, as a witness against an *assignee, executor, or administrator*. As these persons prosecute and defend in their representative character, and have necessarily no personal knowledge of the assigned contract, they cannot, with propriety, avail themselves of the prior provisions of the section, *by offering themselves as witnesses in their own behalf*.

The right to examine the assignor, is, therefore, made to depend on the power of the party against whom he is offered as

a witness, to procure the testimony of the other party to the contract. In this way something like the desired reciprocity is provided for in these cases.

The last clause of the section, requiring notice to be given to the adverse party of the intended examination of an assignor of a contract or thing in action, as a witness in behalf of a person deriving title from him, relates to a subject much more general in its nature, and, with equal reason, embraces every case where that species of evidence is to be resorted to. There is nothing in the nature of the proceedings which gives notice that the assignor is to be examined as a witness, and yet the adverse party has important rights depending on that fact. He must be prepared to meet such evidence in all cases, or, good faith requires that he should have notice when to expect it.

This last clause of the 399th section of the Code of 1851, provides for this notice in all cases. If such a notice was necessary in the case under consideration, there can hardly be a serious pretence that the one which was given was a compliance with the statute. It is quite as indefinite as the notice in the case of *Falon* agt. *Keese.* (8 *How. Pr. Rep.* 341.)

On the whole, I am of the opinion that the notice required by the statute was necessary, and that the one given was not sufficient to authorize the examination of Willis Benham as a witness; and that the judgment of the justice, on that subject, was erroneous, and ought to have been reversed by the county court.

The judgment appealed from must, therefore, be reversed.*

* NOTE. It will be seen that this decision was made in 1854, although the opinion has recently been received for publication. As presenting one side of this mooted question, and a decision made at general term, it will be considered important. This opinion, like all others upon important questions which leave the hands of this venerable judge, will be found to be well considered and closely reasoned.—REPORTER.